ROCHELLE LEWIS, Plaintiff-Appellee, v. ZACHARY CONFECTIONS COMPANY, Defendant-Appellant.

First District (1st Division) No. 86—0257

Opinion filed February 23, 1987.—Rehearing denied March 24, 1987.

312

Griffin & Fadden, Ltd., of Chicago (Lois Solomon and Arthur M. Solomon, of counsel), for appellant.

James G. Crummy and George T. Donoghue, both of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal involves an action for retaliatory discharge brought by Rochelle Lewis, an employee (plaintiff), against Zachary Confections Company, her employer (Zachary). Following a trial, the jury rendered a verdict for the plaintiff awarding a total of $65,000 in damages. Judgment was entered on the jury's verdict, and Zachary appeals from the denial of its motions for a directed verdict, judgment notwithstanding the verdict, a new trial, and remittitur. For the reasons outlined below, we reverse.

The following testimony was introduced on behalf of plaintiff. Plaintiff testified that on December 7, 1982, she was hired to wrap and box assorted candies at Zachary Confections Company at 855 West Washington in Chicago. She and Gloria Norwood, someone plaintiff "knew in the neighborhood," heard about the availability of positions at Zachary from a mutual acquaintance. The two women, along with several others who interviewed at the same time, were hired by Zachary's plant manager Paul Nucera. Plaintiff testified that during that interview, Nucera told those present "we would be working for about 90 days; and if we was good, we could stay on, but we had to join the union."

Plaintiff further testified that on the morning of January 20, 1983, Matilda Wilborn, plaintiff's supervisor on the second floor, told her that Nucera had fired plaintiff and that she should report to his office. According to plaintiff, when she arrived, Nucera informed her that she was fired as a result of filing a workmens' compensation

claim on January 5, 1983, arising out of an accident at the plant on December 18, 1982. Shortly after this conversation, plaintiff proceeded downstairs where she encountered Juanita McCormick, the first-floor supervisor, who reiterated that plaintiff was fired for filing the lawsuit. Following her discharge, plaintiff was unable to obtain other employment.

Gloria Norwood, who also was terminated before the 90-day period expired, testified that she and plaintiff "kind of" grew up together and that they heard about, applied, and interviewed for the job together. They also met at Zachary on their first day of work. Norwood further stated that on or about January 14, 1983, while she was in a closed stall in the ladies' lounge, she overheard Juanita McCormick tell "another lady," who Norwood was unable to identify, that plaintiff was "going to get fired because of the lawsuit." Norwood heard nothing further, and when she emerged from the stall, only McCormick was present. Norwood then left the lounge without speaking to McCormick.

Paul Nucera testified that on December 7, 1982, he hired six or seven employees in addition to plaintiff. Nucera denied telling plaintiff that should she prove to be a good employee, she could continue working beyond the 90-day period if she joined the union. Rather, he told her and the others at the interview "that the job was for 90 days, no benefits, no insurance, nothing, just temporary work." He did so because Zachary's union contract provided that seasonal employees could be hired for no more than 90 days.[1] Nucera stated that on January 20, 1983, he "laid off" plaintiff, as well as between 8 and 10 other employees, due to a "slow down of production."

Walter Splitgerber, treasurer of Zachary, testified that some time after January 6, 1983, but a week or two before plaintiff was terminated, he notified Nucera that it was improper to discharge an employee for filing a workmens' compensation claim. He first became

---

[1]Article XXX of Zachary's union contract regarding temporary employees provides:

"The Company may hire employees as seasonal operation service employees provided that such employees shall be so classified for a period of ninety (90) days. After such period, then an employee shall be classified as a permanent employee and shall receive the minimum wage provided for employees. While classified as temporary, an employee shall be subject to layoff in the discretion of the company.

There is hereby established a special classification for employees involved in the production and shipping of items in connection with which the Company has had little or no experience. Employees in this classification shall be probationary for a period of ninety (90) days."

aware of this prohibition when plaintiff filed her lawsuit. Splitgerber also asserted that plaintiff's time card contained the letter "T" signifying that she was a temporary employee.

Juanita McCormick denied telling plaintiff or anyone else that plaintiff was fired in retaliation for filing a workmens' compensation claim. Rather, according to her and Matilda Wilborn, plaintiff was "laid off" as a result of a seasonal decline in production. Moreover, both women stated that several other temporary employees were discharged the same time as plaintiff due to the slow down. There was conflicting testimony regarding whether plaintiff was working on the first or second floor when she was terminated.

After plaintiff elicited testimony from John Zachary, president of Zachary, that the company's net worth was $660,000, Zachary moved for a directed verdict which was denied. Mr. Zachary was therefore recalled to the stand by defense counsel. He testified that during 1982 and 1983, Zachary was manufacturing Valentine, Easter, and Christmas chocolates. The company's production cycle normally began after Labor Day and ended at Easter. Accordingly, while Zachary would employ approximately 80 union employees and 50 to 60 temporary employees during its height of production in December and January, by July, the work force would be reduced to 10 or 15 employees. Mr. Zachary also attested to defendant's exhibit No. 4, the time cards of 13 temporary employees, including plaintiff's, which bore the letter "T" and indicated those named were hired in either October, November, or December of 1982, and laid off around the third week in January 1983, except for Gloria Norwood, who was laid off in February of that year.

■ Based on the above testimony, the jury rendered a verdict for plaintiff, awarding her $5,000 compensatory damages and $60,000 punitive damages. On appeal, Zachary initially contends that the trial court erred in denying its motions for a directed verdict or judgment notwithstanding the verdict because plaintiff failed to demonstrate that she was fired in retaliation for filing a workmens' compensation claim. It is well established that a directed verdict or judgment *n.o.v.* should be entered in those cases where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern Railroad Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) We believe the *Pedrick* standard was met in the present case.

■ Illinois permits redress for retaliatory discharge where an at-will employee is fired for exercising his rights under the Workers'

Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) Specifically, the elements of retaliatory discharge for filing a workmens' compensation claim are as follows: (1) plaintiff's status as an employee of defendant before injury; (2) plaintiff's exercise of a right granted by the Act; and (3) employee's discharge causally related to the filing of a claim under the Act. (*Slover v. Brown* (1986), 140 Ill. App. 3d 618, 488 N.E.2d 1103.) In the instant case, it is immediately apparent that the record does not contain sufficient proof that plaintiff's discharge was "causally related" to the filing of her claim.

The record reveals that plaintiff was properly hired in accordance with Zachary's union contract, which authorized the hiring of "seasonal" employees who were "subject to layoff in the discretion of the company." Plaintiff's testimony that she was told during an interview with plant manager Paul Nucera that her employment was potentially permanent was refuted by Gloria Norwood, who was present at the same interview, yet stated that she understood the job was for a period of three months and knew of no other employees who were hired during December 1982 who stayed more than three months, and by Nucera himself, who denied ever making such a statement to plaintiff. Moreover, plaintiff's time card specifically contained the letter "T" denoting her temporary employee status.

While plaintiff testified that she was told by Nucera and Juanita McCormick that she was fired as a result of the workmens' compensation claim she filed, there were no witnesses to these statements and both parties denied making them. The only evidence presented to buttress plaintiff's contention was the hearsay testimony of Gloria Norwood, a woman who plaintiff denied was her friend, yet whose name appeared as an emergency reference on plaintiff's job application and who testified that she grew up with plaintiff. Norwood claimed that through a closed door in the ladies' lounge, she overheard Juanita McCormick tell an unidentified third person, whom Norwood neither saw nor heard, that plaintiff was fired because of the lawsuit. Such a phantom colloquy is insufficient for a finding of retaliatory discharge.

Plaintiff argues, however, that in addition to Norwood's testimony, the testimony of Zachary's treasurer, Walter Splitgerber, further corroborates plaintiff's claim of retaliatory discharge. After reviewing Splitgerber's testimony, we disagree. Splitgerber merely asserted that when he was notified of plaintiff's workmens' compensation claim pursuant to a letter dated January 6, 1983, he became aware it was improper to discharge an employee for filing such a claim. Consequently, he informed Nucera of this prohibition to "make

sure we don't do this in the future." Given that this conversation took place a week or two before plaintiff was discharged, as Splitgerber testified, there is no indication that Splitgerber was admonishing Nucera for firing plaintiff as a result of her filing a claim.

Rather, the testimony of Nucera, McCormick, and Matilda Wilborn discloses that plaintiff, who was hired on December 7, 1982, was "laid off" on January 10, 1983, because of a seasonal decline in production. The three also stated that several other temporary employees were hired and laid off approximately the same time as plaintiff, as evidenced by their time cards, due to the slow down. Their testimony is supported by John Zachary, who testified to the nature of the business being such that production and the work force peaked in December and January, and substantially diminished by the spring and summer months.

Plaintiff maintains that the "inconsistent" testimony of Zachary's employees regarding what floor plaintiff was working on when she was terminated refutes the notion that plaintiff was laid off due to a seasonal decline in production. Plaintiff points to Nucera's statement that the production slow down affected the first floor, where, according to Nucera and Wilborn, plaintiff was working when she was terminated, while plaintiff and McCormick testified that plaintiff was working on the second floor at the time. Plaintiff, however, overlooks Nucera's testimony that the second floor was affected by seniority resulting in plaintiff's discharge.

As noted in *Slover v. Brown* (1986), 140 Ill. App. 3d 618, 621, 488 N.E.2d 1103, 1105, an employee's discharge is not causally related to the filing of a claim under the Workers' Compensation Act "if the basis for discharge is valid and nonpretextual." Here, the evidence establishes that plaintiff was laid off in the ordinary course of events along with numerous other temporary employees. The only evidence in the record that Zachary's motive for discharging plaintiff was related to her exercise of her rights under the Act was plaintiff's disputed testimony that two Zachary employees told her so and the hearsay testimony of her friend Gloria Norwood. Any probative value of this scant evidence is greatly diminished when viewed in light of the employee time cards, the union contract, and the other testimony elicited which overwhelmingly favored Zachary. Thus, the evidence was insufficient to support the jury's verdict that plaintiff was a victim of retaliatory discharge. See *Horton v. Miller Chemical Co., Inc.* (7th Cir. 1985), 776 F.2d 1351 (plaintiff's testimony with respect to his former employer's statement regarding "bad risk," and his other evidence regarding how he may have been unjustly discharged were in-

sufficient to establish employer's guilt of discharging plaintiff in retaliation for filing a workmens' compensation claim); see also *Bryce v. Johnson & Johnson* (1983), 115 Ill. App. 3d 913, 921, 450 N.E.2d 1235 (judgment in favor of plaintiff on claim for retaliatory discharge reversed even though the plaintiff testified that the defendant told him that he "didn't need a lawyer" when there was no evidence that the plaintiff was discharged, when there "is [a] total absence of even the slightest interference by [the] defendant in the exercise by plaintiff of all of his rights under the Workmen's Compensation Act[,]" and when the plaintiff exercised his rights with complete effectiveness).

Given our determination that the trial court should have granted Zachary's motion for a judgment notwithstanding the verdict, we need not consider the propriety of Zachary's motions for a new trial and remittitur.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

CAMPBELL and O'CONNOR, JJ., concur.