CHARLES BRAY, Plaintiff-Appellant, v. STAN'S RENTAL, INC., Defendant-Appellee.

Third District   No. 3—89—0511

Opinion filed April 10, 1990.

Julie L. Galassi, of Harvey & Stuckel, Chartered, of Peoria, for appellant.

Darrell K. Seigler, of Ottawa, for appellee.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

The plaintiff, Charles Bray, filed a complaint against the defendant, Stan's Rental, Inc., alleging that he was fired by the defendant in retaliation for pursuing his rights under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*). The defendant subsequently filed a motion for summary judgment. The trial court granted the defendant's motion, and the plaintiff appeals. We reverse.

The record reveals that on January 11, 1988, the plaintiff was injured while working at the defendant's warehouse. In his deposition, the plaintiff explained that he hit his head on an I-beam and was knocked unconscious for a few seconds. His supervisor, Jim Baxter, was present at the time, and the plaintiff immediately informed him of the accident. The plaintiff stated that he waited a few days before seeking medical attention for the injury, because some of the other employees told him he was causing the defendant's insurance rates to go up. He explained that he also had been injured in 1986 and that as a result of that injury he was unable to work for seven months. During that time, he received temporary total disability benefits from the defendant. He noted that he was reinjured in 1987 and lost 3½ months of work, for which he also received temporary total disability benefits.

When the plaintiff saw his family physician a few days after the instant accident, he was referred to a neurologist in Peoria. The neurologist diagnosed the plaintiff as suffering from a concussion and treated him with medication. The plaintiff estimated that as a result of his injury he lost approximately five days of work. He stated that he notified Jim Baxter that he would not be in those days.

The plaintiff further stated that he was scheduled to work on February 25, 1988, but awoke feeling sick. He called the defendant's store at 6:50 a.m. and informed Sharon Snell, the secretary, that he would not be in that day because he was not feeling well. He also told her to notify Gaylon Ryg, the defendant's president, that he would not be in.

About 10:30 a.m., the plaintiff received a phone call from Jim Baxter inquiring why he was not at work. The plaintiff told him that he was not feeling well and that he was dizzy and had been vomiting. According to the plaintiff, Baxter told him that he was fired because, "[w]ell, you've been taking off too many days seeing the doctor and stuff." Later in the conversation, the plaintiff asked

Baxter why he was fired and he replied that the plaintiff was "costing the company a few bucks."

Jim Baxter stated in his deposition that the plaintiff was fired for a number of reasons, including tardiness and poor work performance. He also explained that employees were required to call in between 7 and 7:10 a.m. if they were not going to be in that day, but the plaintiff had not called until 7:30 a.m. Baxter denied making any statement to the plaintiff regarding the plaintiff's costing the company money, claiming instead that it was the plaintiff who had made that statement. He did, however, recall that he spoke to the employees during their breaks regarding safety in the workplace and told them that when someone was injured it was expensive for the company. Baxter noted that he had fired the plaintiff once before, but rehired him the same day.

The defendant's president, Gaylon Ryg, stated in his deposition that although he had affirmed the decision to fire the plaintiff, he had not instructed Baxter to do so. He also noted that of the six other employees who had filed workers' compensation claims in the past, five were still employed by the defendant.

The record further reveals that on March 17, 1988, the plaintiff filed an application for adjustment of claim with the Industrial Commission for the instant injury. The application was signed by the plaintiff on February 25, 1988, the day he was fired by the defendant.

The plaintiff argues on appeal that the trial court erred in granting the defendant's motion for summary judgment.

■ A motion for summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) In ruling on the motion, the trial judge should construe the pleadings, affidavits, exhibits, and depositions most strictly against the moving party and most liberally in favor of the opponent. (*Staton v. Amax Coal Co.* (1984), 122 Ill. App. 3d 631, 461 N.E.2d 612.) Summary judgment is not intended to be used as a means of weighing conflicting issues of fact. *Fletcher v. Boxx* (1973), 10 Ill. App. 3d 928, 295 N.E.2d 248.

■■ ■ To sustain a cause of action for retaliatory discharge, the plaintiff must allege that he was discharged in retaliation for his or her activities and that the discharge violated a clear mandate of public policy. (*Palmateer v. International Harvester Co.* (1981), 85

Ill. 2d 124, 421 N.E.2d 876.) The Illinois Supreme Court has expressly stated that it is against public policy to terminate employees for asserting their rights under the Workers' Compensation Act. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) It is not necessary, however, that the employee actually file a claim for workers' compensation prior to his discharge, but only that he seek medical attention for the injuries. *Hinthorn v. Roland's of Bloomington, Inc.* (1987), 151 Ill. App. 3d 1006, 503 N.E.2d 1128.

In the instant case, the trial court held as a matter of law that no genuine issues of material fact existed regarding whether the plaintiff was discharged for pursuing his rights under the Workers' Compensation Act. We disagree. The plaintiff stated in his deposition that he was told by his supervisor that he was being fired because he had missed too many days due to his injury and because he was costing the company too much money. The supervisor denied making any such statements and further stated that the plaintiff was fired because of tardiness and poor work performance.

■ Based on this record, we find that at a minimum a genuine issue of material fact exists as to the reason behind the plaintiff's discharge. The question is one of credibility regarding the plaintiff's testimony and that of his supervisor, and as such should be left to the trier of fact. The trial court could not have granted summary judgment here without improperly weighing this conflicting evidence. Accordingly, we find that the court erred in granting summary judgment.

The judgment of the circuit court of La Salle County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

BARRY and STOUDER, JJ., concur.