THOMAS E. WIESEMAN, Plaintiff-Appellant, v. KIENSTRA, INC., Defendant-Appellee.

Fifth District   No. 5—91—0780

Opinion filed December 4, 1992.

CHAPMAN, J., dissenting.

William J. Meacham, of Smith, McGrady & Meacham, Ltd., of East Alton, for appellant.

Thompson & Mitchell, of Belleville (Allan M. Goodloe, Jr., and William A. Schmitt, of counsel), for appellee.

JUSTICE WILLIAM A. LEWIS delivered the opinion of the court:

Plaintiff, Thomas E. Wieseman, appeals from a judgment of the circuit court of Madison County, which dismissed the plaintiff's complaint pursuant to section 2—615(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615(b)) for failure to state a

cause of action. The sole issue raised on appeal is whether the court erred in granting the defendant's motion to dismiss. For the reasons set forth below, we affirm.

A complaint which fails to state a cause of action because of factual or legal insufficiency must be dismissed. (*Robbins v. City of Madison* (1990), 193 Ill. App. 3d 379, 549 N.E.2d 947.) A legally sufficient complaint sets forth a legally recognized claim upon which the plaintiff is entitled to recover, while a factually sufficient complaint must plead sufficient facts essential to the alleged cause of action. *Robbins*, 193 Ill. App. 3d 379, 549 N.E.2d 947.

In considering a motion to dismiss, a reviewing court must accept as true all well-pleaded facts alleged in the complaint and all reasonable inferences that can be drawn from those facts. (*Robbins*, 193 Ill. App. 3d 379, 549 N.E.2d 947.) If it clearly appears that no set of facts can be alleged and proven which would entitle the plaintiff to relief, then a complaint has been properly dismissed. (*Robbins*, 193 Ill. App. 3d 379, 549 N.E.2d 947.) If a complaint is stricken and a plaintiff fails to seek leave to amend, it is presumed the plaintiff elects to stand on the stricken complaint, and, if dismissed, the cause of action must stand or fall upon the contents of the complaint alone. *Robbins*, 193 Ill. App. 3d 379, 549 N.E.2d 947.

Here, the plaintiff's complaint was dismissed and he did not seek to amend, so the viability of the plaintiff's complaint turns solely on the sufficiency of the allegations set forth in his complaint. In the plaintiff's complaint, he alleges that prior to April 19, 1991, he was employed by Klueter Brothers Concrete (Klueter); that just prior to that date, he was offered employment by the defendant; that he resigned from Klueter on April 19, 1991; that he reported to work at the offices of the defendant on April 22, 1991; that on April 22, 1991, he punched a time clock, was given work orders, was issued safety equipment, and proceeded to perform his work duties; that also on that date, he underwent a physical examination by the defendant's physicians as required by the defendant; and that on April 23, 1991, when he reported to work, the defendant discharged him. The plaintiff also alleges in his complaint that the reason given for his discharge was "that it was believed by supervisory personnel of Kienstra, Inc. that Plaintiff at some future time might suffer a breakdown of the physical structure of his knee which may result in Plaintiff filing a claim for workers['] compensation pursuant to Illinois Rev. Stat. Chap. 48, Paragraph 138, et seq. [*sic*]." The plaintiff further states in his complaint that his discharge was in direct contravention of the public policy of the State of Illinois. From these allegations, it is ap-

parent the plaintiff sought relief under a cause of action of retaliatory discharge.

■ The tort of retaliatory discharge was first recognized as a cause of action in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353. While the common law doctrine that an employer may discharge an at-will employee for any reason or for no reason is still the general rule in Illinois, the tort of retaliatory discharge has been held to be a limited and narrow exception to this general rule. (*Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 568 N.E.2d 870; *Thomas v. Zamberletti* (1985), 134 Ill. App. 3d 387, 480 N.E.2d 869.) Our supreme court recently reaffirmed this limited and narrow exception by saying: "simply put, 'Illinois allows employers to act on the basis of their employee's physical disabilities; it is only the request for benefits that state law puts off limits as a ground of decision,' *McEwen v. Delta Air Lines, Inc.* (7th Cir. 1990), 919 F.2d 58, 60" (*Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, 160), and "with regard to the fact of discharge, we decline to expand the tort to encompass a retaliatory discharge 'process.'" (*Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, 161.) To state a valid claim for retaliatory discharge, a plaintiff must show that he was (1) discharged, (2) in retaliation for his activities, and (3) that the discharge violated a clear mandate of public policy. (*Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 519 N.E.2d 909.) With these principles in mind, we now consider whether the plaintiff's complaint was sufficient to withstand a motion to dismiss.

The plaintiff contends that he was discharged "prior to having the occasion to seek medical attention for a job related injury," and that the defendant believed that the plaintiff's preexisting condition of one of his knees would be aggravated by the work required of the plaintiff, and that "at some future date Plaintiff would be required to seek medical attention due to the breakdown of the Plaintiff's physical structure," resulting in the plaintiff filing a claim for workers' compensation. The plaintiff characterizes this discharge as a "preemptive strike" against him. The plaintiff asserts, therefore, that his discharge was violative of the public policy stated in the Workers' Compensation Act (Ill. Rev. Stat. 1991, ch. 48, 138.1 *et seq.*) (the Act).

■ We find that the plaintiff's complaint fails to state sufficient facts to support two of the elements necessary to state a cause of action for retaliatory discharge: that the plaintiff was discharged for his activities, and that the discharge violates a clear mandate of public policy. In the plaintiff's complaint, he does not relate any activity he performed which provided the defendant with a retaliatory motive for

his discharge. He does not state that he filed a workers' compensation claim against his former employer or against the defendant, or that he sustained a work-related injury with a former employer or with the defendant for which he sought medical treatment. We cannot even be assured from reading the complaint that plaintiff's potential bad knees are not congenital. Without an activity, a retaliatory motive for the plaintiff's discharge cannot be found to exist.

Further, while the Workers' Compensation Act provides a strong public policy to insure the protection of workers covered by the Act, we find that this policy is not called into play under the circumstances present in this case. The Act is to provide payment of compensation and medical expenses for an employee *injured* at work. The Act does not apply to anticipated future injuries, and an employee's rights under the Act accrue only at such time when a work-related injury occurs. Since the plaintiff has not alleged he has sustained an injury at work, he has no rights he is foregoing under the Act, and the defendant's discharge of him has not violated any public policy. From the facts presented in the plaintiff's complaint, it can only be determined that the plaintiff was an at-will employee and that the defendant had the right to discharge him for any reason or for no reason whatsoever.

Finally, it would be poor public policy to force an employer to keep an employee at a job that ultimately might cause the breakdown of the physical structure of plaintiff's knees and who might be a danger to the public if his knee gave way while operating a truck. If we were to hold in this case that there had been a retaliatory discharge, we would in effect be discouraging employers from giving job seekers physical examinations for the purpose of determining whether the employees could perform their duties, because the employer is going to be held liable regardless of the results of the examination. We would also be encouraging employers to continue an employee in a job that the employer knew would ultimately result in an injury to the employee, because the employer is going to be held liable whether the employer keeps the employee or discharges him. An employer might opt for the least expensive out and that would be keeping the employee at the job and thereby getting some work out of him as opposed to discharging the employee, paying another person to do the employee's job, and suffering the costs of defending a suit and paying damages. In *Hartlein*, the supreme court held that it was not a retaliatory discharge to cause an employee injured at work to seek another job as part of his rehabilitation program. (*Hartlein*, 151 Ill. 2d 142.)

In this case the employer is causing the employee to seek a less strenuous job so that he might not have to undergo rehabilitation.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

H. LEWIS, J., concurs.

JUSTICE CHAPMAN, dissenting:

"If the hiring be general, without any particular time limited, the law construes it to be a hiring for a year; upon a principle of natural equity, that the servant shall serve, and the master maintain him, throughout all the revolutions of the respective seasons, as well when there is work to be done as when there is not." 1 Blackstone, Commentaries on The Laws of England 425 (Garland Publishing, Inc. 1978) (reprint of the 1783 ed. printed for W. Strahan and T. Cadell, London, and D. Prince, Oxford).

"With us the rule is inflexible, that a general or indefinite hiring is *prima facie* a hiring at will, and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. *** [I]t is an indefinite hiring and is determinable at the will of either party, and in this respect there is no distinction between domestic and other servants." H.G. Wood, Master and Servant §134, at 272 (1877).

"We are not convinced that an employer's otherwise absolute power to terminate an employee at will should prevail when that power is exercised to prevent the employee from asserting his statutory rights under the Workmen's Compensation Act." *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 181, 384 N.E.2d 353, 357.

From Blackstone's recognition of the importance of the seasons in an agrarian society through Wood's statement made at the height of laissez-faire capitalism to the modern adaption of limitations expressed in *Kelsay* covers slightly over 200 years of history of the employment-at-will doctrine. This doctrine and its public policy exceptions have been the subject of many commentaries (see, *e.g.*, Callahan, *The Public Policy Exception to the Employment At Will Rule Comes of Age: A Proposed Framework for Analysis,* 29 Am. Bus. L.J. 481 (1991); Swan, *The Economics of the Retaliatory Discharge Public Policy Action,* 9 St. Louis U. Pub. L. Rev. 605 (1990); Loseman, *Unrav-*

*eling the Illinois Retaliatory Discharge Tort,* 1989 U. Ill. L. Rev. 517; Henry, *Update on Retaliatory Discharge in Illinois,* 40 Lab. L.J. 426 (1989); Henry, *Retaliatory Discharge: Status of the Tort in Illinois,* 38 Lab. L.J. 146 (1987); Yonover, *Retaliatory Discharge in Illinois: Recent Developments,* 61 Chi.-Kent L. Rev. 671 (1985); Feinman, *The Development of the Employment at Will Rule,* 20 Am. J. Legal Hist. 118 (1976)), some of which have been critical of the employment-at-will rule (see, *e.g.,* Sokachitch, *Good Faith and Fair Dealing in Illinois: An Application in the Employment Context,* 1987 U. Ill. L. Rev. 183; Blades, *Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum. L. Rev. 1404 (1967)).

I dissent, not because of the criticisms, but because I believe the majority has not followed the limitations on the doctrine imposed by *Kelsay* and its progeny. My disagreement with the majority is based on two grounds; I feel it has made unwarranted assumptions and unjustified conclusions.

Turning first to the unwarranted assumptions, the majority suggests the plaintiff may have been discharged because it was unsafe for him to operate a truck or because his employer was trying to protect him from injury. However, these arguments are unpersuasive for two reasons: first, they were not raised by the defendant, probably because they appear nowhere in the record; and second, while evidence on those matters might appear later in these proceedings, this case is before us on the pleadings, and the allegations of the complaint must be taken as true for purposes of a section 2—615 motion to dismiss. *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790.

What are the significant allegations for purposes of this appeal? That the *reason* for plaintiff's discharge was "that it was believed by supervisory personnel of Kienstra, Inc. that Plaintiff at some future time might suffer a breakdown of the physical structure of his knee which may result in Plaintiff filing a claim for workers['] compensation." To refine the issue slightly, can an employer discharge a worker because he has some physical problem that might cause him to file a workers' compensation claim? The trial court answered affirmatively, and the majority affirms.

As I have indicated, the majority makes certain assumptions which are unwarranted and reaches certain conclusions with which I do not agree. I have already discussed two of the unwarranted assumptions, the protection of the employee from future injury and the protection of the public from an unsafe driver. The former assumption

is alluded to again in the majority's concluding sentence, "In this case the employer is causing the employee to seek a less strenuous job so that he might not have to undergo rehabilitation." (237 Ill. App. 3d at 725.) The fact that the majority can draw this conclusion of paternalistic benevolence from the record before us reminds me of a comment reportedly made by Clarence Darrow during the anthracite commission hearings in Pennsylvania many years ago. Apparently evidence was presented about the hours of work in the underground mines and the use and abuse of young boys in the mines and of young girls in the mills that had been built adjacent to the mines. To counter this evidence, one of the coal companies offered testimony of its president's concern for children. To this, Darrow reportedly responded, "Oh yes, Mr. _____ loves the little children; like a wolf loves lambs!" I hasten to add that I do not equate Kienstra with the coal company president, for there is neither anything in the record to support such an equation nor is it this court's function to make such a judgment. But neither is it this court's function to attribute to the defendant the laudable notion of encouraging the employee to seek a less strenuous job and avoid undergoing rehabilitation.

Turning from what I view as unwarranted assumptions to the conclusions with which I do not agree, the latter are of two types; first are the factual results that the majority fears will flow from a reversal of the trial court's dismissal; second are the legal conclusions it draws from its examination of *Kelsay* and its progeny.

There are two factual results about which the majority expresses concern. "If we reverse," the majority says, "we will discourage employers from giving preemployment physicals." I do not agree. Preemployment physicals are an appropriate and important tool of employers, a tool that can benefit both the employer and the employee when properly used, and a tool whose use would not be foreclosed by a reversal in this case. It is not the preemployment (in this case actually post-employment) physical that is challenged; it is the improper use of the physical as a means of discharging a worker to prevent the possibility of a workers' compensation claim that is challenged by a reversal.

Second, the majority postulates that a reversal would encourage an employer to keep an employee in a job that the employer knew would ultimately result in harm to the worker. Again I disagree. A reversal of this case would not force a concerned employer to choose between regulating its work force to minimize injuries and keeping an employee in place and "thereby getting some work out of him." (237 Ill. App. 3d at 724.) Instead, what a reversal of this case would do is

prevent employers from violating the State's public policy with regard to workers' compensation claims.

In addition to my disagreement with the majority on its assumptions and factual conclusions, I also disagree with its holding that the complaint fails to contain sufficient facts to establish two of the elements of a retaliatory discharge case; "that the plaintiff was discharged for his activities, and that the discharge violates a clear mandate of public policy." 237 Ill. App. 3d at 723.

Turning to the second stated failure first, it is clear that the plaintiff has alleged that he was discharged because the condition of his knees "may result in Plaintiff filing a claim for workers ['] compensation." At this point his allegation must be accepted as true, and what can it mean except that plaintiff was discharged to prevent the possible future filing of a workers' compensation claim? Such a discharge violates the public policy protecting a worker's right to the free exercise of benefits under the Workers' Compensation Act first recognized by the supreme court in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, and consistently reaffirmed by the courts of this State in the intervening 14 years.

The strength of the supreme court's convictions on public policy in this area is indicated by its recognition of the need for the tort of retaliatory discharge *and* punitive damages as protective mechanisms in the absence of any constitutional provision or legislative enactment establishing such a policy. Indeed, Justice Underwood, the sole dissenter in *Kelsay*, disagreed not because of the result, "I write no brief for an employer who tells an industrially injured employee that the employee will be discharged if a claim for compensation is filed." (*Kelsay*, 74 Ill. 2d at 190, 384 N.E.2d at 361 (Underwood, J., concurring in part and dissenting in part).) Justice Underwood dissented because he felt the relief should come from the legislature and not the court. Justice Underwood's concern would be alleviated, and the strength of the legislature's convictions on public policy in this area can be demonstrated, by the amendment to the Workers' Compensation Act which made it unlawful to interfere with workers' rights under it:

> "(h) It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him [or her] by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his [or her]

exercise of the rights or remedies granted to him [or her] by this Act.

It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his [or her] rights or remedies granted to him [or her] by this Act." (Ill. Rev. Stat. 1975, ch. 48, par. 138.4(h).)

Thus, it is obvious from *Kelsay* and the amendment to the Act that of the three sources of public policy, constitutional provisions, legislative enactments, and judicial decisions, the latter two have indicated a policy of protection for workers' rights to claim their benefits under the workers' compensation laws of this State.

If anything else is necessary to establish the policy of this State on this issue, I would suggest an examination of section 3 of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.3), which makes the Act apply automatically and without election to all designated employers and their employees:

"The provisions of this Act hereinafter following shall apply *automatically and without election* to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation, and to all employers and all their employees ***." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 48, par. 138.3.

What is the significance of section 3 in this case? Assume a hypothetical situation in which an employee approaches her employer with the following offer: "I understand that I'm covered by workers' compensation, and I appreciate that, but I'd really rather have the cash than the protection. I've worked for you for five years, and I've never been hurt. There aren't many hazards in my line of work. If you would pay me 25 cents more an hour, I'd waive my workers' compensation rights, and I'd be a happier employee." Note that the employee has made the initial approach, and there is no indication of coercion or any improper activity by the employer. Assume also that the employer knows that the insurance premium for this employee costs 40 cents an hour so compliance with the employee's request would accomplish two things, save 15 cents an hour for the employer, and make the employee happier. Both parties would apparently be better off as a result of the new arrangement. Contracts are made every minute of every day on the basis of such appearances. Both parties agree it is in their interests to make the agreement. There is no coer-

cion, fraud or duress; there is consideration, but there will be no contract recognized in this hypothetical. Why not? Because even though both parties agree, the State does not. The legislature expressed the public policy of the State prohibiting such a contract when it passed section 3 making the Workers' Compensation Act applicable without election. Freedom of contract is trumped by the State's public policy of ensuring that all covered workers have the right to claim their benefits under the Act. If the public policy of the State in this area is strong enough to prohibit freely bargained agreements negotiated by both parties, can there be any doubt that it will prohibit unilaterally imposed restrictions such as discharge because of the possibility of a future workers' compensation claim? I submit that the answer must be no and that has been the answer of the supreme court of this State.

The supreme court first spoke on this issue in 1978 in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353. Since then there have been several additional cases.

The supreme court has addressed the tort of retaliatory discharge in no less than nine workers' compensation cases. It has expanded the tort to include union employees (*Ryherd v. General Cable Co.* (1988), 124 Ill. 2d 418, 530 N.E.2d 431; *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280), employees who request medical care (*Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 519 N.E.2d 909), and employees who have filed compensation claims against other employers (*Darnell v. Impact Industries, Inc.* (1984), 105 Ill. 2d 158, 473 N.E.2d 935).

In addition, as the State Appellate Court has grappled with the tort of retaliatory discharge, its dimensions have grown more clear. The appellate court has held that plaintiffs in a variety of situations have stated a claim for retaliatory discharge. For example, a claim was recognized for an employee who was discharged after filing more claims despite being warned not to (*Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 484 N.E.2d 841), for an employee who was terminated immediately after injury (*Wolcowicz v. Intercraft Industries Corp.* (1985), 133 Ill. App. 3d 157, 478 N.E.2d 1039), for a seasonal employee who was not recalled after filing a claim (*Motsch v. Pine Roofing Co.* (1988), 178 Ill. App. 3d 169, 533 N.E.2d 1), and for an employee who was discharged because his employer feared he would file an additional claim for benefits (*Richardson v. Illinois Bell Telephone Co.* (1987), 156 Ill. App. 3d 1006, 510 N.E.2d 134).

These cases together with those listed below chart the history of the tort of retaliatory discharge in the workers' compensation context. The cases are as follows.

## ILLINOIS SUPREME COURT

*Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142.

*Ryherd v. General Cable Co.* (1988), 124 Ill. 2d 418, 530 N.E.2d 431.

*Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 527 N.E.2d 303.

*Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 519 N.E.2d 909.

*Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 503 N.E.2d 308.

*Boyles v. Greater Peoria Mass Transit District* (1986), 113 Ill. 2d 545, 499 N.E.2d 435.

*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280.

*Darnell v. Impact Industries, Inc.* (1984), 105 Ill. 2d 158, 473 N.E.2d 935.

*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.

## FIRST DISTRICT

*Groark v. Thorleif Larsen & Son, Inc.* (1992), 231 Ill. App. 3d 61, 596 N.E.2d 78.

*Colvett v. L. Karp & Sons, Inc.* (1991), 211 Ill. App. 3d 731, 570 N.E.2d 611.

*Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302, 562 N.E.2d 282.

*Austin v. St. Joseph Hospital* (1989), 187 Ill. App. 3d 891, 543 N.E.2d 932.

*Netzel v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 808, 537 N.E.2d 1340.

*Motsch v. Pine Roofing Co.* (1988), 178 Ill. App. 3d 169, 533 N.E.2d 1.

*Taylor v. Tsekeris* (1987), 163 Ill. App. 3d 195, 516 N.E.2d 562.

*Lewis v. Zachary Confections Co.* (1987), 153 Ill. App. 3d 311, 505 N.E.2d 1087.

*Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 484 N.E.2d 841.

*Raisl v. Elwood Industries, Inc.* (1985), 134 Ill. App. 3d 170, 479 N.E.2d 1106.

*Wolcowicz v. Intercraft Industries Corp.* (1985), 133 Ill. App. 3d 157, 478 N.E.2d 1039.

*Elia v. Industrial Personnel Corp.* (1984), 125 Ill. App. 3d 1026, 466 N.E.2d 1054.

*Rubenstein Lumber Co. v. Aetna Life & Casualty Co.* (1984), 122 Ill. App. 3d 717, 462 N.E.2d 660.

*Bryce v. Johnson & Johnson* (1983), 115 Ill. App. 3d 913, 450 N.E.2d 1235.

*Henon v. Lever Brothers Co.* (1983), 114 Ill. App. 3d 608, 449 N.E.2d 196.

*Wyatt v. Jewel Cos.* (1982), 108 Ill. App. 3d 840, 439 N.E.2d 1053.

### SECOND DISTRICT

*Hess v. Clarcor, Inc.* (1992), 237 Ill. App. 3d 434.

*Kritzen v. Flender Corp.* (1992), 226 Ill. App. 3d 541, 589 N.E.2d 909.

*Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 549 N.E.2d 1295.

*Bragado v. Cherry Electrical Products Corp.* (1989), 191 Ill. App. 3d 136, 547 N.E.2d 643.

*Parton v. A.L. Randall Co.* (1989), 180 Ill. App. 3d 856, 534 N.E.2d 1077.

*Fuentes v. Lear Siegler, Inc.* (1988), 174 Ill. App. 3d 864, 529 N.E.2d 40.

*Richardson v. Illinois Bell Telephone Co.* (1987), 156 Ill. App. 3d 1006, 510 N.E.2d 134.

*Byrd v. Aetna Casualty & Surety Co.* (1987), 152 Ill. App. 3d 292, 504 N.E.2d 216.

*Cook v. Optimum/Ideal Managers Inc.* (1984), 130 Ill. App. 3d 180, 473 N.E.2d 334.

*Colley v. Swift & Co.* (1984), 129 Ill. App. 3d 812, 473 N.E.2d 364.

### THIRD DISTRICT

*Bilderback v. Admiral Co.* (1992), 227 Ill. App. 3d 268, 591 N.E.2d 36.

*LaPorte v. Jostens, Inc.* (1991), 213 Ill. App. 3d 1089, 572 N.E.2d 1209.

*Bray v. Stan's Rental, Inc.* (1990), 196 Ill. App. 3d 384, 553 N.E.2d 791.

*Armstrong v. Freeman United Coal Mining Co.* (1983), 112 Ill. App. 3d 1020, 446 N.E.2d 296.

FOURTH DISTRICT

*Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1992), 229 Ill. App. 3d 680, 593 N.E.2d 1070.

*Miller v. J.M. Jones Co.* (1992), 225 Ill. App. 3d 799, 587 N.E.2d 654.

*Melton v. Central Illinois Public Service Co.* (1991), 220 Ill. App. 3d 1052, 581 N.E.2d 423.

*Cunningham v. Addressograph Multigraph Corp.-Bruning Division* (1980), 87 Ill. App. 3d 396, 409 N.E.2d 89.

FIFTH DISTRICT

*Jones v. Burkart Foam, Inc.* (1992), 231 Ill. App. 3d 500, 596 N.E.2d 882.

*Lowrance v. Marion Pepsi-Cola Bottling Co.* (1991), 221 Ill. App. 3d 623, 582 N.E.2d 725.

*Knecht v. Radiac Abrasives, Inc.* (1991), 219 Ill. App. 3d 979, 579 N.E.2d 1248.

*Sloan v. Jasper County Community Unit School District No. 1* (1988), 167 Ill. App. 3d 867, 522 N.E.2d 334.

*Wayne v. Exxon Coal USA, Inc.* (1987), 157 Ill. App. 3d 514, 510 N.E.2d 468.

*Hugo v. Tomaszewski* (1987), 155 Ill. App. 3d 906, 508 N.E.2d 1139.

*Slover v. Brown* (1986), 140 Ill. App. 3d 618, 488 N.E.2d 1103.

The above list of cases represents most, if not all, of the Illinois cases on retaliatory discharge for exercising worker's compensation rights. Not all of the cases found in the workers' favor, but the vast majority of them did unless the defendant had a valid nonpretextual reason for the discharge. This fact is important in this case for two reasons. First, no valid reason for the defendant's act is present in this case at this stage of the pleadings. Second, this trend appears to have been adopted as part of the causation analysis by the supreme court in its most recent case, *Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, 163 (which holds that "the ultimate issue to be decided is the *employer's motive* in discharging the employee"). (Emphasis added.)

Before turning to the majority's second legal conclusion, I will address its reliance upon the recent case of *Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, which is distinguishable for several reasons.

First, in order for the worker in *Hartlein* to have been entitled to injunctive relief, he would have had to show "the fact or threat of dis-

charge" (*Hartlein*, 151 Ill. 2d at 161), which he could not do. There is no question, however, that the plaintiff in this case was discharged. Second, Illinois Power's actions in *Hartlein* were not "accompanied by conduct or statements which indicated a prohibited discriminatory intent on the part of Illinois Power. Rather, Hartlein was advised that the proposed work search was considered to be governed by workers' compensation law." (*Hartlein*, 151 Ill. 2d at 162.) In this case, the plaintiff has alleged that his discharge was because he might file a workers' compensation claim in the future. Third, and most important, is the difference in the element of causation. In *Hartlein*, the supreme court concluded that there was no question that the worker was unable to perform his earlier job and that the employer acted appropriately in requiring the worker to engage in rehabilitative efforts. Consequently, no improper motive was shown. By contrast, in this case, or at least at this point in this case, the *only* motive alleged for the discharge was improper. As *Hartlein* notes:

> "*Kelsay, 74 Ill. 2d 172, holds that the employer may not present the employee with a choice between his job and his legal entitlement to compensation. Kelsay thereby prohibits an employer from utilizing an employee's job as leverage to condition his exercise of rights under the Act; Kelsay does not, however, prohibit the leveraging of benefits under the Act to condition the exercise of employment rights.*" (Emphasis added.) (*Hartlein*, 151 Ill. 2d at 166.)

The emphasized language in the last quotation from *Hartlein* not only does not support the majority's position, it militates against it.

Therefore, the majority's second argument, that the plaintiff failed to adequately allege that he was discharged for his activities, should fail. While I agree that "activities" has generally meant the filing of a claim, it is clear that it does not take the affirmative act of filing a claim to support a cause of action for retaliatory discharge.

The tort of retaliatory discharge is designed to prevent the employer from frustrating the employee's exercise of rights under the Act. The tort of retaliatory discharge is more of a stick than a carrot, and it does not require the filing of a compensation claim as a prerequisite to the existence of the tort. For example, if an employee is injured at work and is handed a pink slip as he is carried out the gate by the ambulance attendants, would anyone contend that he would be barred from filing a retaliatory discharge claim because he had not filed a compensation claim before his discharge? I think not, and neither did the supreme court in *Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 519 N.E.2d 909:

"It would be anomalous to allow a retaliatory discharge action to employees who are fired after filing a workers' compensation claim for work-related injuries, but not those who are injured and fired before they ever get the chance to file such claims. Plaintiff should not be penalized because her employer discharged her in retaliation for orally requesting medical attention, instead of filing a formal compensation claim—the effect is the same: being fired in retaliation for asserting legal rights to medical care for work-related injuries." (*Hinthorn*, 119 Ill. 2d at 534, 519 N.E.2d at 913.)

In *Hinthorn*, the employee reported the injury and requested medical attention. In *Wolcowicz v. Intercraft Industries Corp.* (1985), 133 Ill. App. 3d 157, 478 N.E.2d 1039, the employer apparently intervened as soon as it became aware that plaintiff allegedly fell and injured his back. Again, no workers' compensation claim was filed, but the court protected the employee.

Similarly, the majority contends that the tort of retaliatory discharge cannot be invoked unless the worker has suffered an injury. I submit, however, that it is neither the injury, nor the filing of a claim that the tort seeks to protect. It is the ability to exercise the right to file a claim, the ability to seek relief, that is protected by the tort. This position is recognized by *Darnell v. Impact Industries, Inc.* (1984), 105 Ill. 2d 158, 473 N.E.2d 935, which upheld the plaintiff's claim although the plaintiff had not been injured at all in her present employment.

These cases suggest, and I would hold, that the second element of the tort of retaliatory discharge, which the majority holds requires an "activity," more accurately requires the plaintiff to demonstrate that the discharge was caused by an employer's improper efforts to frustrate the employee's rights under the Act and to avoid its statutorily imposed duty. As I have discussed, in its most recent opinion on the issue, the supreme court recognized that *the employer's motive* was the ultimate issue to be decided concerning the element of causation. *Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142.

Granted, the more definite or the more recent an employee's activities, the easier it is to establish causation. However, at this stage of this case, it is not necessary for plaintiff to *establish* causation; he need only properly allege it. I believe that causation can be adequately alleged in the absence of any clearly ascertainable act. For example, if an employer met all employees as they reported to work, advised them that the company strongly discouraged its employees from filing compensation claims against it and discharged those who questioned

the policy because they were possible claimants, this employer would have exercised its power to frustrate its employees' rights under the Workers' Compensation Act. The frustration of the workers' rights under the Act is the action prohibited by the public policy of the State and protected against by the tort of retaliatory discharge. Even though the discharged employee did not file a claim, did not sustain an injury and did not seek medical treatment, his rights under the Act were frustrated, and that frustration was caused by the employer's efforts to prevent its employees from filing compensation claims against it.

That the employee's acts are not as significant as the employers' acts is also borne out by the remedies available for the tort of retaliatory discharge. Not only is the wrongfully discharged employee compensated for the loss, but the employer is also subject to punitive damages. Therefore, even a totally disabled employee, who might be entitled to only minimal compensatory damages, could maintain a cause of action for retaliatory discharge. In choosing to allow the recovery of punitive damages for the tort of retaliatory discharge, the court chose to protect an employee's rights under the Act by punishing the employer for its acts in derogation of those rights. Arguably, then, because it is equally, if not more, important to punish and deter an employer from violating the public policy of this State, the tort of retaliatory discharge cannot depend for its existence primarily on the employees' activities. If this were the case, then employers, by intervening sooner, say at the time of hiring, could effectively prevent workers' compensation claims from being filed against themselves. Employers could achieve this goal, not by providing a safer work environment, but by identifying and terminating those employees most likely to make compensation claims. Whether such a termination occurs after one day of employment, as in this case, or after 30 years of faithful service, in what may become the more frequent case, it is wrong; it is prohibited by the public policy of this State, and the prohibition is made meaningful by the tort of retaliatory discharge.

The majority has locked the tort of retaliatory discharge into too rigid a framework with its position in this case. The plaintiff has alleged facts sufficient to support his cause of action for retaliatory discharge. I would reverse the circuit court's order dismissing his complaint.