VICKI R. REINNECK, Plaintiff-Appellee, v. TACO BELL CORPORATION, Defendant-Appellant.

Fifth District    No. 5—97—0365

Opinion filed June 22, 1998.

212

Dennis E. Rose, of Donovan, Rose, Nester, Szewczyk & Joley, P.C., of Belleville, and John P. Lavey, Scott C. Trout, and Mayer S. Klein, all of Newman, Goldfarb, Freyman & Klein, P.C., of Clayton, Missouri, for appellant.

Harriet Homsher Hamilton and Joseph A. Bartholomew, both of Cook, Shevlin, Ysursa, Brauer & Bartholomew, Ltd., of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff, Vicki Reinneck, filed a complaint against her former employer, Taco Bell Corporation (Taco Bell), seeking compensatory and punitive damages, as well as damages for mental anguish and for injury to her reputation. Plaintiff alleged that she was terminated by defendant in retaliation for asserting her rights to workers' compensation. After a bench trial, the trial court found for plaintiff and assessed damages in the amount of $370,000 in compensatory damages, $25,000 for mental anguish, and $1,000,000 in punitive damages.

Defendant appeals, asserting that (1) there is no cause of action for retaliatory discharge in Illinois for an exercise of rights under another state's workers' compensation laws, (2) its due process rights were violated because the court misinterpreted the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)), (3) the trial court erred in allowing the testimony of former Taco Bell employees called by plaintiff, and (4) the trial court erred by not allowing the testimony of a witness that defendant wished to call in rebuttal. Defendant further asserts that (5) the compensatory award should be overturned because it was against the manifest weight of the evidence, (6) the award for emotional distress should be reversed because plaintiff failed to present any evidence on the issue, and (7) the trial court's decision is against the manifest weight of the evidence. Finally, defendant contends that the trial court erred in finding that (8) plaintiff's testimony was credible, and (9) plaintiff proved that she was terminated in retaliation for exercising her rights to compensation. We discuss the issues in the order they were raised by defendant. For the following reasons, we affirm.

■ Defendant first contends that the trial court erred in entering judgment for plaintiff because no cause of action for retaliatory discharge exists under Illinois law for an exercise of rights under another state's workers' compensation statute. We believe that defendant's argument is misplaced. First, it was not necessary for the trial court to find that plaintiff was fired because she asserted her rights under another state's workers' compensation laws. Plaintiff's complaint asserted that she was fired in retaliation for asserting her rights under the Missouri *and* Illinois Workers' Compensation Acts. It is undisputed that Illinois recognizes a cause of action for the retaliatory discharge of an employee who asserts his or her rights to workers' compensation. See *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978). The fact that a plaintiff has not filed a claim in Illinois prior to her discharge does not preclude her from bringing a retaliatory discharge cause of action; it is enough if she has sought medical attention for her injuries and her employer discharged her for that assertion of her workers' compensation rights. *Bray v. Stan's Rental, Inc.*, 196 Ill. App. 3d 384, 387, 553 N.E.2d 791, 792-93 (1990). Before she was terminated, plaintiff sought medical attention for her injuries, informed her Illinois supervisors about her injuries, and informed the same supervisors that she was hiring a lawyer to pursue her remedies. Therefore, the pleadings support a retaliatory discharge cause of action under Illinois law pursuant to her assertion of rights under the Illinois Workers' Compensation Act only.

■ Additionally, we conclude that the trial court could have properly found that it is against Illinois public policy to terminate an employee for the assertion of another state's workers' compensation rights. Defendant repeatedly argues that to allow plaintiff to recover under the circumstances of this case is to expand the tort of retaliatory discharge in Illinois. This argument is unpersuasive. Illinois has long recognized the tort of retaliatory discharge for exercising rights to workers' compensation. See *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978). It makes no logical difference, and is not an expansion of the tort, to hold that an employer is subject to liability for retaliating against a worker who has exercised his or her rights under another state's workers' compensation law. The tort is the same; there is no expansion.

We note that the Illinois Supreme Court has determined that the tort of retaliatory discharge also protects employees who have filed compensation claims against other employers. See *Darnell v. Impact Industries, Inc.*, 105 Ill. 2d 158, 473 N.E.2d 935 (1984). We can find no logical reason not to protect employees who have filed compensation claims against the same employer in another state.

Defendant next argues that its right of due process was violated because the court misinterpreted the Illinois Workers' Compensation Act to include a cause of action for retaliatory discharge pursuant to another state's workers' compensation law. In light of our discussion and ruling on the previous point, we need not further discuss this issue.

Next, defendant asserts that the trial court erred in admitting into evidence the testimony of former employees of defendant. Defendant argues that the testimony should not have been allowed because evidence of prior wrongs is not admissible to show conformity therewith on the occasion at issue. In its order, the court stated that it did not consider this testimony for the purpose of assessing compensatory damages but did consider it in assessing punitive damages. We conclude that the trial court would have been correct to admit the evidence in assessing both types of damages depending upon the purpose for which the evidence was used.

■ The general rule is that evidence of prior similar tortious or wrongful conduct is not relevant on the question of the conduct on the occasion in issue unless the evidence is offered to show habit, state of mind, knowledge, motive, or intent. *Joseph Taylor Coal Co. v. Dawes*, 220 Ill. 145, 77 N.E. 131 (1906); *Wernowsky v. Economy Fire & Casualty Co.*, 106 Ill. 2d 49, 477 N.E.2d 231 (1985). The ultimate issue to be decided in a retaliatory discharge action is the employer's motive in discharging the employee. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 163, 601 N.E.2d 720, 730 (1992). Evidence of prior discriminatory conduct or of statements condoning or advocating discrimination is admissible to show motive. *Mack v. First Security Bank*, 158 Ill. App. 3d 497, 511 N.E.2d 714 (1987).

■ The testimony of former Taco Bell employees who were fired for filing claims or who overheard management personnel discussing firing employees who filed compensation claims is directly relevant to one of the ultimate issues in this case—motive. Therefore, the testimony was properly admitted.

Defendant argues that *Knecht v. Radiac Abrasives, Inc.*, 219 Ill. App. 3d 979, 579 N.E.2d 1248 (1991), prohibits the introduction of the other employees' testimony. In *Knecht*, the defendant sought to introduce testimony to show that it treated fairly other employees who filed workers' compensation claims. The court pointed out the general rule that evidence of conduct on other occasions is not relevant on the question of conduct on the occasion in issue unless the evidence is offered to show habit, routine business practice, state of mind, knowledge, or intent. *Knecht*, 219 Ill. App. 3d at 986, 579 N.E.2d at 1252. The court ruled that the evidence of the defendant's treat-

ment of other workers was not proper evidence of habit or routine business practice and that it could not be construed as evidence of state of mind, intent, or knowledge. Therefore, the court held, the trial court was correct in not allowing the testimony. *Knecht*, 219 Ill. App. 3d at 987-88, 579 N.E.2d at 1254.

In the case at bar, the testimony of the former employees was offered to show defendant's motive for terminating an employee who files, or might file, a compensation claim. The motive established through this testimony supported plaintiff's claim that defendant's reasons for firing her were pretextual. We conclude that the trial court did not abuse its discretion in considering this evidence.

We point out that our supreme court has recognized that other-crimes evidence, as well as evidence of wrongs or acts which are not criminal, may be relevant to prove motive in criminal cases. See, *e.g.*, *People v. Enis*, 163 Ill. 2d 367, 645 N.E.2d 856 (1994); *People v. Stewart*, 105 Ill. 2d 22, 473 N.E.2d 840 (1984). Such evidence is allowed in criminal cases despite the fear that such evidence will overpersuade a jury to convict a person only because it thinks he or she is a bad person and deserves punishment. See *People v. Robinson*, 167 Ill. 2d 53, 62, 656 N.E.2d 1090, 1094 (1995). We find that our supreme court's policy of allowing the introduction of other wrongs to show motive where a person's liberty is at stake supports our decision in this case.

Defendant next argues that the court erred in barring a witness that it wished to call to rebut the testimony of the former employees called by plaintiff. Plaintiff contends that the witness was not properly disclosed.

■ The determination of whether to bar a witness who has not been properly disclosed is within the sound discretion of the trial court. See *Palmer v. Minor*, 211 Ill. App. 3d 1083, 570 N.E.2d 774 (1991). Defendant claims that the witness should have been no surprise to a diligent plaintiff's counsel because her name was on a list of hundreds of names of St. Louis area employees terminated in the last five years. Listing hundreds of names without indicating whether any will testify is not a sufficient reply to a request for disclosure of witnesses. The trial court did not abuse its discretion in barring the witness.

■ Defendant next argues that the trial court erred in awarding compensatory damages to plaintiff. Damages awarded by a trial court sitting without a jury will not be set aside unless they are manifestly erroneous. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 543, 662 N.E.2d 1248, 1256 (1996).

■ Defendant also contends that the compensatory award of $370,000 is not supported by the record. Plaintiff presented evidence

that she made a salary of $24,400 a year, plus raises and benefits, prior to her termination by Taco Bell. The record reflects that she now makes from $8,750 to $10,400 a year, for a difference of $14,000 to $15,650 a year, not including raises and benefits. Plaintiff was 44 at the time of trial; therefore, she had 21 years of employment remaining. Using both sets of numbers, in 21 years, plaintiff's lost future wages will be between $294,100 and $328,600.

Although it is well established that an award of future damages must be reduced to its present-day cash value (*Stringham v. United Parcel Service, Inc.*, 181 Ill. App. 3d 312, 317, 536 N.E.2d 1292, 1295 (1989)), neither side presented evidence of the appropriate discount rate at trial, and the trial court's order does not state whether its award takes into account any discounting.

Under similar circumstances, in *Heldenbrand v. Roadmaster Corp.*, 277 Ill. App. 3d 664, 660 N.E.2d 1354 (1996), this court reduced the trial court's award of $200,000 compensatory damages to $167,000, an amount that was clearly supported by the record. However, in that case, the plaintiff only proved he would have earned $167,000 had he not been terminated, and he did not provide any evidence of raises or benefits.

In this case, plaintiff proved that future wage loss could have amounted to as much as $328,600. Plaintiff was also off work for three years before trial. During that time she earned between $5,000 and $6,000 at various jobs. At Taco Bell plaintiff would have earned $73,200, making her past lost wages approximately $67,200 to $68,200.

The trial court could, therefore, have set plaintiff's compensatory damages as high as $396,800 without considering lost benefits such as health insurance, stock options, and pension. Plaintiff testified that her stock options amounted to 10% of her salary per year, that she had life, health, dental, and vision insurance coverage, and that she would have been eligible for $55,000 in pension benefits after five years with Taco Bell.

Because the trial court set damages lower than an amount clearly supported by the record, and because plaintiff presented evidence of raises and benefits, we cannot hold that the trial court's ruling is manifestly erroneous.

Defendant next argues that the award of future damages was erroneous because plaintiff failed to mitigate her damages. A wrongfully discharged employee must attempt to mitigate her damages by seeking similar employment. *Arneson v. Board of Trustees*, 210 Ill. App. 3d 844, 851-52, 569 N.E.2d 252, 257 (1991). Plaintiff introduced into evidence a lengthy list of employers whom she contacted in her job search. Defendant was able to present the testimony of employers

from plaintiff's list that potentially refuted her claim that she had attempted to procure employment with their restaurants.

The trial court, as the trier of fact, is in a better position than this court to determine the credibility of witnesses. *In re Marriage of Eltrevoog*, 92 Ill. 2d 66, 71, 440 N.E.2d 840, 842 (1982). The trial court apparently determined that plaintiff did, in fact, make a good-faith search for employment but possibly made some mistakes in retrospectively recording her list. We cannot say that the trial court abused its discretion in that determination.

Defendant points to the testimony of Tim Kaver for the proposition that plaintiff could have acquired similar employment quickly and easily. Kaver, a job rehabilitation expert, testified that he developed 23 potential job leads for plaintiff and that she should have been able to find gainful employment in the restaurant industry in 30 to 90 days. Defendant refers to this evidence as unrefuted.

On cross-examination, however, Kaver testified that he did not reveal to the potential employers that plaintiff had been fired from her job at Taco Bell. Kaver suggested that plaintiff not volunteer at her interviews the true reason that she was fired. Kaver also acknowledged that if plaintiff were truthful with an employer, it would probably make it less likely for her to be employed. We cannot characterize this evidence as "unrefuted" and do not believe that the trial court abused its discretion in its consideration of it.

We also do not believe that plaintiff's wage-loss evidence was speculative or uncertain. Plaintiff introduced ample evidence of her attempts and failures at finding comparable work up to the time of trial, and she testified about the jobs that she took to make ends meet. The trial court's award was limited to damages that were reasonably certain, and the award was not manifestly erroneous.

■ Defendant next argues that the emotional distress award should be reversed because the evidence was insufficient as a matter of law to support such an award. Defendant contends that plaintiff's testimony was so vague that it does not support an award of emotional distress.

Plaintiff testified that it "didn't feel very well" to be fired, that she had to give up property on which she and her husband were going to build a house, that she felt like she had wasted 14 years of her life, and that she had lost all of her credibility. Defendant claims that the evidence of plaintiff's emotional distress was extremely limited and did not warrant the imposition of $25,000 in damages. The trial court is in the best position to evaluate such testimony, and its determination is entitled to deference on review. *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 433, 581 N.E.2d 656, 660 (1991); *Haudrich*, 169 Ill. 2d at 543, 622 N.E.2d at 1256. The fact that a plaintiff testifies only

briefly about an injury does not necessarily lessen the severity of the injury. For example, an amputee who testifies, "My leg is gone and the fact that it is gone bothers me," may have spoken volumes in a single sentence. Considering plaintiff's testimony with the facts of the case, we believe that the trial court could determine that plaintiff experienced emotional distress. The trial court's award is not manifestly erroneous.

■ Defendant next asserts that the trial court's ruling is against the manifest weight of the evidence because plaintiff was repeatedly shown to be untruthful and the defense witnesses proved to be credible and damning to plaintiff's case. Because the trial court is in a much better position to determine the credibility of the witnesses and the weight to be afforded conflicting testimony, the appellate court will not reconsider the evidence or reassess the witnesses' credibility or demeanor and will not substitute its judgment on such matters unless the trial court's findings are against the manifest weight of the evidence. *Knight's Prairie Hunting Club, Inc. v. Holmes*, 263 Ill. App. 3d 455, 461, 636 N.E.2d 29, 33 (1994). The trial court's order shows that it was not as satisfied with the credibility of the defense witnesses as defense counsel was. We note that the trial court was required to determine the credibility of almost every witness whose testimony was crucial to the outcome of this case. It is not clear from the evidence in the record before us that the trial court's determination is manifestly erroneous.

■ Finally, defendant argues that plaintiff failed to prove that she was terminated for exercising her rights to workers' compensation, because defendant had a valid, nonpretextual reason for her termination.

A retaliatory discharge claim requires a showing that the employee has been discharged in retaliation for her activities and that her discharge was in violation of a clear mandate of public policy. *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 134, 421 N.E.2d 876, 881 (1981). To recover, a plaintiff must affirmatively show that she was discharged in retaliation for the exercise of her protected right. *Dixon Distributing Co. v. Hanover Insurance Co.*, 244 Ill. App. 3d 837, 845, 612 N.E.2d 846, 852 (1993), *aff'd*, 161 Ill. 2d 433, 641 N.E.2d 395 (1994).

This court will not substitute its judgment for that of a trial judge sitting as the trier of fact unless that judgment is against the manifest weight of the evidence. *Schroeder v. Meier-Templeton Associates, Inc.*, 130 Ill. App. 3d 554, 474 N.E.2d 744 (1984). A decision is against the manifest weight of the evidence where, upon a review of all of the evidence in the light most favorable to the party prevailing at trial, the

opposite conclusion is clearly apparent. *Rainey v. City of Salem*, 209 Ill. App. 3d 898, 568 N.E.2d 463 (1991).

We believe that the evidence supports a finding that plaintiff's termination was in retaliation for filing and/or over concern that she would file more compensation claims, a protected right under Illinois law. In view of the evidence before us, the trial court could have found that: plaintiff received above-average evaluations at all times except after filing compensation claims or taking leave after on-the-job injuries; a supervisor could provide no documentary evidence of disciplinary action against or counseling sessions with plaintiff even though that supervisor was a stickler for details; plaintiff returned to work for a time and retained her title of assistant manager, but she was not given any keys, the alarm code, the combination to the safe, or her hepatitis shots; and Taco Bell used plaintiff's absenteeism due to child care difficulties as a pretext for firing her in retaliation for filing a workers' compensation claim in Missouri or over concern that she might file a claim in Illinois.

The trial court's holding that plaintiff was terminated in retaliation for exercising her rights to compensation is not against the manifest weight of the evidence. We affirm.

Affirmed.

MAAG and GOLDENHERSH, JJ., concur.