**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250458-U

Order filed June 3, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| HALI MOORE, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Petitioner-Appellee, | ) | Bureau County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-25-0458 |
| | ) | Circuit No. 25-OP-97 |
| | ) | |
| LUKAS MANRRIQUEZ, | ) | Honorable |
| | ) | James A. Andreoni, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Justices Davenport and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1       *Held*:   The circuit court's decision to issue a plenary stalking no contact order against respondent was not against the manifest weight of the evidence.

¶ 2       Respondent, Lukas Manrriquez, appeals from a plenary stalking no contact order (SNCO),

arguing that the order was against the manifest weight of the evidence. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        On August 7, 2025, petitioner, Hali Moore, obtained an *ex parte* emergency SNCO against respondent. On September 10, 2025, the matter proceeded to a plenary hearing where petitioner appeared *pro se* and respondent was represented by counsel.

¶ 5        At the hearing, petitioner clarified with the court that she was seeking the plenary order on behalf of herself and her 15-year-old daughter, K.R.[1] Petitioner testified that on August 4, 2025, she went to respondent's residence to pick up K.R. Petitioner explained that K.R. went to see respondent without her permission and respondent had refused to drive K.R. home. After arriving at respondent's residence, petitioner and respondent began arguing and screaming at each other. Respondent's father threatened to call the police and reached into petitioner's vehicle to remove her keys after respondent claimed petitioner was intoxicated. Petitioner grabbed respondent's father by the back and moved him out of the way so she could enter her vehicle. As petitioner attempted to close her driver's side door, respondent pulled the door open and repeatedly punched her. Photographs taken after the incident were admitted depicting bruises on petitioner's face, neck, shoulder, and arm. Petitioner noted that respondent had a pending criminal battery charge stemming from the incident.

¶ 6        When asked by the court if she had any testimony to offer as to why an SNCO should issue on behalf of K.R., petitioner indicated that an incident related to K.R. occurred in her backyard on July 11, 2025. Petitioner stated that she did not personally witness the incident because she was inside the house. On cross-examination, petitioner stated she had incorrectly dated the incident in her petition as May 30, 2025. Petitioner subsequently indicated the July 11 incident had actually occurred on June 11 during testimony from her daughter, C.R.-M.

---

[1]Although the emergency SNCO indicated that it was issued on behalf of a minor child, the corresponding box requesting this relief was not checked on the preprinted petition form, which instead included K.R. as an additional protected party.

¶ 7        C.R.-M. testified that on June 11, 2025, she was in her backyard and witnessed respondent become angry and threaten to kill two of her male friends after they refused to get respondent food. K.R. attempted to calm respondent down and he pushed her, causing her to stumble and almost fall. C.R.-M. testified that K.R. started crying and their younger sister ran into the house to tell petitioner what occurred.

¶ 8        Respondent moved to dismiss the petition, arguing the statutory requirements were not met because the evidence failed to establish two or more incidents directed at one individual, as the June 11 incident related to K.R. and the August 4 incident related to petitioner. Respondent further asserted that there had been no testimony regarding any mental suffering or anxiety. During counsel's argument, petitioner interjected and requested permission to provide additional testimony regarding the June 11 incident. The court indicated it would grant petitioner's request because she was *pro se*.

¶ 9        Petitioner further testified that after she was notified of the incident, she went outside and heard respondent repeat that he was going to kill the two friends he had threatened earlier. Petitioner told respondent to go into the house, and he became angry. Petitioner stated that respondent "got in [her] face" and she told him to stop. Petitioner directed respondent again to go inside and informed him that they would talk about it the next day.

¶ 10        Respondent objected to petitioner's additional testimony based on her earlier representation that she was not present during the June 11 incident. The court overruled the objection, stating:

> "I'll be very clear on the record, okay. If I have an 18-year-old thinking that
> he can tell the mother of a 15-year-old that the 15-year-old is running the

show, that doesn't cut it with the court. So let's be very, very clear about that.

I'm going to give [petitioner] some leeway here. You may be right, [defense counsel], and you may get the ruling that you're requesting, but I have heard some testimony that's disturbing to the court."

On cross-examination, petitioner conceded that the interaction between her and respondent on June 11 was not included in her petition and claimed the omission was due to her lack of knowledge regarding how much detail to provide when she filed it.

¶ 11    The court granted respondent's motion to dismiss in part, finding that the testimony had failed to establish the requisite course of conduct to issue a plenary order on behalf of K.R. because only one alleged incident was directed at her. The court denied the motion as it related to petitioner, finding that the two alleged incidents presented were sufficient to demonstrate a course of conduct because her testimony regarding respondent's actions toward her on June 11 constituted "confronting the victim *** on private property."

¶ 12    Respondent asked the court to reconsider the partial denial of his motion based on the lack of evidence demonstrating that the June 11 incident caused petitioner any mental suffering, anxiety, or harm. The court denied the request, noting that respondent still had the opportunity to testify and any additional testimony could potentially lead to a different conclusion about what occurred.

¶ 13    Respondent did not present any testimony or evidence. The court issued a plenary SNCO prohibiting respondent from threatening to commit stalking or committing stalking; from having any contact with petitioner; and from knowingly coming within, or knowingly remaining within, 100 feet of petitioner's residence.

4

¶ 14                                    II. ANALYSIS

¶ 15        On appeal, respondent argues that the circuit court's issuance of the plenary SNCO was against the manifest weight of the evidence because petitioner failed to show respondent engaged in a course of conduct directed at her. Specifically, respondent contends that the evidence established only one incident that was directed at petitioner because K.R. was the subject of the June 11 incident and petitioner presented no evidence that respondent's behavior toward her in the aftermath of that incident caused her any harm, mental suffering, or anxiety. Petitioner has not filed a responsive brief. However, we will address the merits of this appeal because the record is straightforward and the issue raised can be resolved without the aid of an appellee brief. See *McHenry Township v. County of McHenry*, 2022 IL 127258, ¶ 48.

¶ 16        As an initial matter, respondent suggests that it was improper for the court to allow petitioner's additional testimony following his motion to dismiss but fails to clearly develop a pertinent argument or cite any supporting authority. Accordingly, respondent has forfeited this issue as "[t]his court is not a repository into which an appellant may foist the burden of argument and research." (Internal quotation marks omitted.) See *Kieken v. City of Joliet*, 2023 IL App (3d) 220392, ¶ 20.

¶ 17        "Stalking generally refers to a course of conduct, not a single act." 740 ILCS 21/5 (West 2024). Section 10 of the Stalking No Contact Order Act (Act) defines stalking as "engaging in a course of conduct directed at a specific person, and he or she knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety, *** or the safety of a third person or suffer emotional distress." *Id.* § 10. Conduct that constitutes stalking includes but is not limited to acts in which a respondent directly engages in any nonconsensual contact with the victim, including "approaching or confronting the victim in a public place or on private property."

5

*Id.* The Act defines a "[r]easonable person" as "a person in the petitioner's circumstances with the petitioner's knowledge of the respondent and the respondent's prior acts." *Id.* " 'Emotional distress' means significant mental suffering, anxiety or alarm." *Id.*

¶ 18  To obtain relief under the Act, a petitioner must prove stalking by a preponderance of the evidence. *Id.* § 30. Once issued, an SNCO will not be reversed unless it is against the manifest weight of the evidence. *Coutant v. Durell*, 2021 IL App (3d) 210255, ¶ 72. A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, or contrary to the evidence. *Id.* Under this standard, we defer to the court as the trier of fact and will not substitute our judgment on issues involving the weight of the evidence or the credibility of witnesses. *Reinneck v. Taco Bell Corp.*, 297 Ill. App. 3d 211, 219 (1998).

¶ 19  Here, the court found, based on uncontroverted testimony, that respondent directly engaged in nonconsensual contact with petitioner on June 11 by confronting her on private property when he became angry and "got in [her] face." Additional unrebutted testimony and photographs related to the August 4 incident established that respondent had repeatedly punched petitioner, leaving her visibly injured. Taken together, these two acts supported a finding that respondent engaged in a course of conduct that he knew or should have known would cause a reasonable person in petitioner's position to fear for their safety or suffer emotional distress. As the Act's reasonable person standard is an objective test, petitioner's subjective testimony that she feared for her safety or suffered emotional distress was not required to issue an SNCO. See *Nicholson v. Wilson*, 2013 IL App (3d) 110517, ¶ 15; *Sheehan v. Wolf*, 2016 IL App (4th) 150976-U, ¶ 39 (explicit testimony is not necessary where a reasonable fear for personal safety or emotional distress can be inferred from the evidence). Considering respondent's aggressive and physically violent behavior, it was

neither unreasonable nor arbitrary for the court to conclude that respondent knew or should have known his actions would cause a reasonable person fear, anxiety, or alarm. Therefore, we cannot find that the court's decision to issue an SNCO was against the manifest weight of the evidence.

¶ 20                                III. CONCLUSION

¶ 21          The judgment of the circuit court of Bureau County is affirmed.

¶ 22          Affirmed.